UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHY BENNETT,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

                                        /

Case No. 1:16-CV-312

HON. ROBERT HOLMES BELL

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for supplemental security income (SSI) under Title XVI of the Social Security Act.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was fifty-two years of age on the date of the ALJ's decision. (PageID.41, 155.) She completed the ninth grade, and was previously employed as a horticultural worker, hand packager, and hi-lo operator. (PageID.55, 259.) Plaintiff previously applied for benefits in June 2011. (PageID.44.) After an administrative hearing, ALJ Nicholas Ohanesian issued a written decision on April 5, 2013, finding Plaintiff was not disabled. (PageID.131–147.) That decision was affirmed by the Appeals Council on June 26, 2014. (PageID.148–151.) Shortly thereafter, on June 30, 2014, Plaintiff filed another application for SSI benefits, alleging that she had been disabled since January 1, 2008, due to bipolar disorder, injuries from a motorcycle accident, depression,

colitis, back problems, and carpal tunnel syndrome. (PageID.155, 229–234.) This application was denied on September 24, 2014, after which time Plaintiff requested a hearing before an ALJ. (PageID.172–175.) On December 11, 2015, Plaintiff appeared with her counsel before ALJ Michael Condon for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.62–129.) On January 13, 2016, the ALJ issued his written decision, concluding that Plaintiff was not disabled. (PageID.41–61.) On March 8, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.32–35.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 416.920(f)).

*See* 20 C.F.R. § 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at step five. At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2014, her application date. (PageID.46.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) status-post bilateral clavicle fractures, post surgery; (2) left scapular fracture, status-post surgery; (3) right shoulder AC joint separation, status-post surgery; (4) carpal tunnel syndrome (CTS); (5) cervical and lumbar spine degenerative changes with cervical radiculopathy; (6) chronic obstructive pulmonary disease (COPD); (7) history of polysubstance dependence / abuse; (8) anxiety; (9) mood disorder; and (10) personality disorder. (PageID.46–47.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.47–49.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> light work as defined in 20 CFR 416.967(b) that is she can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently, sit for up to six hours total and stand and/or walk for up to four hours total in an eight-hour workday. She can frequently climb ramps and stairs, kneel, and crouch, never climb ladders, ropes, or scaffolds or crawl, but may have unlimited balancing. She can occasionally push/pull with the right upper extremity. She can frequently handle bilaterally, but can only rarely (defined as five percent of the

> workday) reach or lift overhead bilaterally.  She has no difficulty reaching and lifting to head level.  She can have no exposure to extreme cold and only occasional exposure to vibration and hazards including unprotected heights and dangerous moving machinery.  She is limited to doing simple, routine, and repetitive work that involves making simple work-related decisions and tolerating routine workplace changes.  Finally, she can have occasional contact with the general public.

(PageID.49.)    Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform her past relevant work.  (PageID.54–55.)  At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that Plaintiff could perform the following work: inspector (18,000 national positions), office helper (30,000 national positions), and mail sorter (15,000 national positions).  (PageID.120–122.)  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (PageID.56.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from June 30, 2014, through January 13, 2016, the date of decision.  (PageID.56.)

### DISCUSSION

**1.   The ALJ's Analysis of Dr. Robert Bruxvoort's Opinion Complies With the Treating Physician Rule.**

On December 3, 2015, Dr. Robert Bruxvoort, Plaintiff's treating physician, completed a one page medical source statement regarding Plaintiff's limitations.  The worksheet consists of thirteen questions in which the doctor's obligation was only to fill in a blank, or circle an answer from a list of several possibilities.  (PageID.503.)  Among other things, Dr. Bruxvoort indicated he had been treating Plaintiff since May 2014 with a frequency of examinations of every

two to three months.  Plaintiff was diagnosed with COPD, chronic back pain, anxiety, fibromyalgia, PTSD, bipolar disorder, and degenerative disc disease.  (PageID.503.)  He assigned Plaintiff a prognosis of "fair - poor."  (PageID.503.)  Dr. Bruxvoort declined to opine on how often Plaintiff could sit, stand or walk, as well as how many pounds she was able to lift or carry, and also declined to opine on how often Plaintiff could perform several postural activities.  (PageID.503.)  He did indicate however, that Plaintiff's pain was of such a severity that it would frequently interfere with her attention and concentration needed to perform even simple tasks.  (PageID.503.)  He identified Plaintiff's signs and symptoms as substance dependance, anxiety, and depression, and also indicated that Plaintiff's chronic pain, anxiety, and PTSD affected her ability to work.  (PageID.503.) Finally, were she to work, Dr. Bruxvoort noted Plaintiff could be expected to miss work more than four days per month.  (PageID.503.)  The ALJ assigned only little weight to this opinion.  (PageID.53.) Plaintiff argues the ALJ should have given the opinion controlling weight.[2]  (PageID.1040.)  The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R.

---

[2] The ALJ also discussed an April 20, 2015, opinion from Dr. Bruxvoort which indicated Plaintiff would need assistance with certain daily activities. (PageID.54.) Plaintiff makes no mention of this opinion, and therefore the Court will only discuss the ALJ's treatment of the doctor's December 3, 2015, opinion.

§ 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The ALJ explained he was assigning Dr. Bruxvoort's opinion only little weight because the doctor "provided no explanation for his conclusions, especially the number of days off work. This is particularly problematic given the lack of any physical limitations offered by the doctor, not to mention that the signs and symptoms limiting the claimant were 'Substance

dependence,' [']Anxiety,' and 'Depression,' but nothing else." (PageID.53.) The ALJ has provided a good reason for assigning only little weight here.  As relevant regulations point out, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that opinion. The better an explanation a source provides for an opinion, the more weight [The Commissioner] will give that opinion."  20 C.F.R. 416.927(c)(3).  Here, as the ALJ noted, the opinion lacks any accompanying explanation.  Plaintiff argues, however, that the ALJ's focus was too narrow, and claims the overall record is consistent with the opinion.  (PageID.1042–1044.)  Therefore, Plaintiff contends, if the opinion "is not inconsistent with other substantial evidence, then the issue, of whether the ALJ's opinion is supported by substantial evidence, is moot."  (PageID.1041–42.)

　　　　　Plaintiff's argument is without merit. In confronting a similar argument where the plaintiff argued an opinion was not inconsistent with the record, the Sixth Circuit indicated that "it is nearly impossible to analyze whether that is true because . . . [the] analysis is not accompanied by any explanation."  *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016). The opinion here suffers from a similar flaw.  It is, as Plaintiff appears to acknowledge, completely unaccompanied by any explanation.  The majority of the opinion consists of little more than impairments or diagnoses that Plaintiff suffers from.  A meaningful explanation here is crucial because, as the Sixth Circuit has observed, "the mere diagnosis" of a condition "says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also McKenzie v. Comm'r of Soc. Sec.*, No. 99–3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) ("the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual").  As the *Hernandez* court further noted, the

Sixth Circuit has "previously declined to give significant weight to rudimentary indications that lack an accompanying explanation." *Hernandez*, 644 F. App'x at 474 (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014). Dr. Bruxvoort's opinion is similarly flawed, and accordingly amounts to only "weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Plaintiff's argument is rejected.

### 2. The ALJ Was Not Required to Give More Weight to Dr. Bruxvoort's Opinion than to the Opinion of a Nonexamining Agency Consultant.

In his decision, ALJ Condon indicated he was giving significant weight to the opinion of Dr. Ron Marshall, Ph.D., a state agency consultant who opined that the mental limitations from the prior opinion should be adopted. In assigning it significant weight, the ALJ noted there was no new and material evidence demonstrating a significant change in Plaintiff's mental functioning since ALJ Ohanesian's earlier decision. He also noted that Plaintiff sought little mental health treatment since the prior decision, and that the majority of her mental status examinations have been normal. (PageID.53.)

Though not raised in her statement of errors, Plaintiff contends that the ALJ erred in assigning greater weight to Dr. Marshall's opinion than to Dr. Bruxvoort's because the "ALJ generally should assign more weight to the opinion of a source who has examined the claimant than to an opinion of a source who has not examined the claimant." (PageID.1045.) Plaintiff is correct that "[a]s a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination." *Gayheart*, 710 F.3d at 375. But it is by no means as rigid a rule as Plaintiff apparently would prefer. Rather, an examining relationship is only one of the factors an ALJ is to consider when weighing medical opinions. *See* 20 C.F.R. § 416.927(c); *see also McClean v. Colvin*, No. 3:11–cv–236, 2013 WL

9

4507807, at *8 (M.D. Tenn. Aug. 23, 2013) ("[R]espective examining and non-examining status [is] only one of several relevant factors [.]"); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). Consistency is another important factor: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4).

The ALJ is responsible for weighing conflicting medical opinions. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). Here, it is patent the ALJ understood the agency consultant had not examined Plaintiff, but nonetheless noted that the opinion was consistent with the record and was based upon the consultant's detailed knowledge of agency regulations. (PageID.53.) The ALJ accordingly properly evaluated the medical opinions under 20 C.F.R. § 416.927(c).

Finally, Plaintiff contends that the ALJ erred by failing to follow the VE's testimony at the administrative hearing regarding Dr. Bruxvoort's opinion. (PageID.1046.) In response to a hypothetical incorporating the doctor's opinion that Plaintiff could be expected to miss more than four days of work each month, the VE testified that such a limitation would preclude all work. (PageID.123.) The ALJ was not required to adopt this testimony. In his hypothetical questions to a VE, an ALJ is required to incorporate only those limitations which he finds credible and supported

by the record.  *See Casey v. Sec'y of Health & Human Servs.*, 14 987 F.2d 1230, 1235 (6th Cir. 1993).  As discussed above, the ALJ gave Dr. Bruxvoort's opinion little weight because it lacked any meaningful explanation, and the Court has found the ALJ did not err in doing so.  Thus, the ALJ was not bound by the VE's response to a hypothetical question including limitations he found were not credible and were unsupported by the record.  Accordingly, Plaintiff's claim of error is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.


Dated: <u>December 30, 2016</u>                              /s/ Robert Holmes Bell               
                                                                        ROBERT HOLMES BELL
                                                                        UNITED STATES DISTRICT JUDGE